# <u>EXHIBIT B</u>

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ITR CONCESSION COMPANY LLC, *et al.*,[1] | ) | Case No. 14-34284 (PSH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF UBS SECURITIES LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE SPECIAL COMMITTEE OF STATEWIDE MOBILITY PARTNERS LLC, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE AND (B) WAIVING CERTAIN INFORMATION REQUIREMENTS IMPOSED BY LOCAL BANKRUPTCY RULE 5082-1(C)

Upon the application (the "Application") of the Debtors[2] for entry of this Order (a) authorizing the employment and retention of UBS Securities as investment banker and financial advisor for the Special Committee effective *nunc pro tunc* to the Petition Date and (b) requesting a waiver of the time keeping requirements of Local Bankruptcy Rule 5082-1(C), all as more fully set forth in the Application; and upon the Otton Declaration; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: ITR Concession Company LLC (0293); ITR Concession Company Holdings LLC (0285); and Statewide Mobility Partners LLC (1312). The location of the Debtors' service address for the purposes of these chapter 11 cases is: c/o ITR Concession Company LLC, 205 North Michigan Avenue, Suite 2510, Chicago, Illinois 60601.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

and other parties in interest; and the Court having found that the Debtors provided appropriate
notice of the Application and the opportunity for a hearing on the Application and no other
notice need be provided; and the Court having reviewed the Application and having heard the
statements in support of the relief requested therein at a hearing before the Court
(the "Hearing"); and the Court having determined that the legal and factual bases set forth in the
Application and at the Hearing establish just cause for the relief granted herein; and any
objections (if any) to the requested relief having been withdrawn or overruled on the merits; and
the Court being satisfied based on the representations made in the Application and the Otton
Declaration that UBS Securities does not hold or represent an interest adverse to the Debtors'
estates and that UBS Securities is a "disinterested person" as defined in section 101(14) of the
Bankruptcy Code as required by section 327(a) of the Bankruptcy Code and Bankruptcy Rule
2014(a); and after due deliberation and sufficient cause appearing therefor, it is HEREBY
ORDERED THAT:

1.      The Application is approved as set forth herein.

2.      The Debtors are authorized to retain and employ UBS Securities as the investment
banker and financial advisor for the Special Committee of Statewide Mobility Partners LLC's
Board of Directors in these chapter 11 cases, pursuant to the terms and conditions set forth in the
Application and the Engagement Letter, *nunc pro tunc* to the Petition Date.

3.      Except to the extent set forth herein, the Engagement Letter (together with all
annexes thereto), a copy of which is attached hereto as **Exhibit 1**, including the Fee and Expense
Structure, is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the
Debtors are authorized and directed to perform their payment, reimbursement, contribution, and
indemnification obligations and their non-monetary obligations in accordance with the terms and

2

conditions, and at the times specified, in the Indemnification Agreement. Subject to paragraph six of this Order, all compensation, reimbursement of expenses, indemnification, contribution and reimbursement to UBS Securities under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review including that set forth in section 330 of the Bankruptcy Code.

4.      Notwithstanding anything to the contrary herein or in the Engagement Letter and absent further order of the Court, neither UBS Securities nor any of its affiliates shall be authorized, or deemed authorized, to advise, or receive any consideration from, the Special Committee, the Debtors, any Acquiror, or any other party with respect to the terms of proposed debt financing (if any) to be provided by, or arranged by, UBS Securities or one or more of its affiliates, in connection with a Sale Transaction.

5.      The Debtors are authorized to pay UBS Securities' fees and to reimburse UBS Securities for its reasonable costs and expenses as provided in the Engagement Letter, including in-sourced document production costs, travel costs, meals, and the fees, disbursements, and other charges of UBS Securities' external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

6.      UBS Securities shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable orders of the Court; *provided, however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rule 5082-1(C), and any other

3

orders and procedures of the Court are hereby modified such that UBS Securities' personnel shall be required only to maintain records in summary format containing reasonably detailed descriptions of those services provided to the Special Committee, UBS Securities' professionals shall not be required to maintain any time records or divide time records on a "task and activity" basis, and UBS Securities shall not be required to provide or conform to any schedule of hourly rates.

7. UBS Securities shall be compensated in accordance with the terms of the Engagement Letter and, in particular, all of UBS Securities' fees and expenses in these chapter 11 cases are hereby approved pursuant to section 328(a) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the fees and expenses payable to UBS Securities pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of UBS Securities' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code; provided, however, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of UBS Securities' compensation.

KE 33748720

8.      The indemnification, contribution, and reimbursement provisions included in the Indemnification Agreement attached to the Engagement Letter are approved in their entirety; *provided* that neither UBS Securities nor any indemnified party shall be entitled to any indemnification pursuant to the terms of the Engagement Letter on account of any losses, claims, damages, liabilities, and expenses to the extent that a court of competent jurisdiction determines in a judgment that has become final and is no longer subject to appeal or other review that such losses, claims, damages, liabilities, and expenses resulted primarily from the bad faith, gross negligence, or willful misconduct of UBS Securities.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter and this Order, the terms of this Order shall govern.

11.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

13.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: **OCT 2 8 2014**
Chicago, Illinois

_____
The Honorable Pamela S. Hollis
United States Bankruptcy Judge

5

KE 33748720

**<u>Exhibit 1</u>**

**Engagement Letter**

<u>Exhibit 1</u>

Engagement Letter

September 4, 2014

<u>CONFIDENTIAL</u>

Special Committee of Board of Directors of
Statewide Mobility Partners LLC
c/o ITR Concession Company LLC
205 North Michigan Avenue
Suite 2510
Chicago, Illinois 60601

Statewide Mobility Partners LLC
c/o ITR Concession Company LLC
205 North Michigan Avenue
Suite 2510
Chicago, Illinois 60601

Ladies and Gentlemen:

    1.  UBS Securities LLC ("<u>UBS</u>") is pleased to act as exclusive financial advisor to the Special Committee (the "<u>Special Committee</u>") of the Board of Directors of Statewide Mobility Partners LLC, a Delaware limited liability company (the "<u>Company</u>") to provide financial advisory services to the Special Committee to assist the Special Committee in soliciting, exploring, evaluating and negotiating a potential Sale Transaction (as defined below) involving the Company and any other third party (each, together with its affiliates and subsidiaries, an "<u>Acquiror</u>"). This letter agreement (the "<u>Agreement</u>") confirms the terms of our engagement. The term of UBS' engagement hereunder shall commence on July 21, 2014 (the "<u>Effective Date</u>") and continue until the earlier of July 21, 2016 and the date this Agreement is terminated in accordance with its terms (the "<u>Term</u>"). UBS is being engaged by and shall provide advice to the Special Committee and shall not be responsible for communications with any other representative of the Company; provided, at the request of the Special Committee, UBS will meet with and provide such information and updates as directed by the Special Committee to the Board of Directors of Statewide Mobility Partners LLC and the group of certain holders of secured claims against the Company represented by Milbank Tweed Hadley & McCloy LLP (the "<u>Group</u>") and the legal and financial advisors to such Group (it being understand that interested members of the Company's Board of Directors shall recuse themselves from participating in any such status updates to the extent provided in the Restructuring Support Agreement (as defined below).

    As used in this Agreement, the term "<u>Sale Transaction</u>" means, whether effected directly or indirectly or in one transaction or a series of transactions: (a) any merger, consolidation, reorganization or other business combination pursuant to which the Company sells, leases, licenses or transfers all or a significant portion of its businesses and assets to an Acquiror or pursuant to which all or a significant portion of the Company's business and assets are combined with those of an Acquiror, or (b) the sale, transfer or other disposition of all or substantially all of the capital stock of the Company (other than capital stock retained or to be retained by creditors of ITR Concession Company LLC pursuant to a bankruptcy plan and capital stock issued or to be issued to the operator of the Company's principal asset (in its capacity as such)) or all or a significant portion of the business and assets of the Company to an Acquiror by way of tender or exchange offer, negotiated purchase, leveraged buyout, or other similar

transaction. For the avoidance of doubt, a Sale Transaction shall not include any Reorganization Transaction (as defined in the Restructuring Support Agreement) or any transaction or series of transactions entered into by the Company in connection with a case under title 11 of the United States Code (other than a transaction or series of transactions contemplated by clauses (a) and (b) of this paragraph) or under which the capital stock of the Company is issued primarily to creditors of ITR Concession Company LLC in exchange for their existing claims.

On the terms and subject to the conditions of this Agreement, UBS will provide the Special Committee with such financial and market related advice and assistance as may be appropriate and mutually agreed upon by the Special Committee and UBS, which may include assisting the Special Committee in analyzing, structuring, negotiating and effecting the proposed Sale Transaction, including testimony necessary to obtain bankruptcy court approval of any Sale Transaction.

In addition to the advice and services set forth above with respect to a Sale Transaction, (i) UBS and the Special Committee shall each negotiate in good faith to seek to reach agreement on the terms of proposed debt financing to be provided by, or arranged by, UBS or one or more of its affiliates, which debt financing would be made available to prospective buyers in connection with a Sale Transaction to finance a portion of the consideration to be paid in connection with such Sale Transaction; or (ii) if no Sale Transaction is consummated, UBS and the Company (which shall not, for the avoidance of doubt, include the Special Committee), acting on behalf of itself, ITR Concession Company Holdings LLC, and ITR Concession Company LLC, shall each negotiate in good faith to seek to reach agreement on the terms of proposed debt financing to be provided by, or arranged by, UBS or one or more of its affiliates, which debt financing would be made in connection with the Reorganization Transaction contemplated in the Plan (as such terms are defined in the Restructuring Support Agreement) at the time of effectiveness of the Plan (such debt financing, collectively, the "Stapled Financing"). The Stapled Financing shall have such terms and conditions as are mutually agreeable to the Special Committee (with respect to a Sale Transaction) or the Company (with respect to a Reorganization Transaction), as applicable, and UBS, and as are acceptable to the Required Consenting Secured Parties (as defined in the Restructuring Support Agreement dated as of September 4, 2014 (as amended, modified, or supplemented from time to time, the "Restructuring Support Agreement")) in their sole discretion.

The Company understands and acknowledges that potential conflicts of interest, or a perception thereof, may arise as a result of (a) UBS' engagement to provide financial advisory services to the Company and the fees in connection therewith and (b) UBS' or any of its affiliates' providing or arranging the Stapled Financing for prospective Acquirors and the fees in connection therewith. The Company hereby consents to the participation by UBS or any of its affiliates in providing or arranging such Stapled Financing if the terms thereof are agreed upon as set forth in the preceding paragraph. The Company, on behalf of itself, its Board and its equity security holders (solely in their capacity as equity security holders and not in any other capacity, including as a potential Acquirer), waives (to the extent permitted by applicable law) any and all claims that the Company, its Board or its security holders (solely in their capacity as equity security holders and not in any other capacity, including as a potential Acquirer) have or may have insofar as such claims relate to or are based upon any actual or potential conflicts of interest that arise out of or relate to UBS or any of its affiliates providing or arranging

the Stapled Financing for prospective Acquirors while providing financial advisory services to the Special Committee. The Company acknowledges and agrees that UBS and its affiliates (in their respective capacities as financing sources) in all events will be entitled to look to their own interests and objectives in determining whether, and on what terms, any Stapled Financing will be arranged, without any responsibility for taking into consideration the potential impact on the Company, the sale process or the ultimate price paid for the Company, and will be entitled to act as they deem appropriate to protect their interests as underwriter, creditor or in other financing roles or capacities, including, without limitation, by exercising any power, discretion, right or remedy, withholding any agreement, consent, waiver or approval or making any other decision or determination in respect thereof. The Company and UBS agree that prospective Acquirors will not be required to accept the Stapled Financing as their exclusive financing option.

The Special Committee and the Company acknowledge and agree that, there is an existing confidentiality agreement between the Company and UBS. UBS and its affiliates shall internally identify the individuals who will address the Stapled Financing (the "Stapled Financing Team"), which group may be expanded or supplemented from time to time so long as the individuals who become members of the Stapled Finance Team have not been privy to any confidential information relating to the sale process. UBS, on behalf of itself and any of its affiliates who are providing the Stapled Financing or arranging the Stapled Financing agree that, in accordance with the existing confidentiality agreement with the Company, UBS and its affiliates will not distribute any confidential information, other than information that has been provided to other potential third party lenders, to the members of the Stapled Financing Team, absent prior consent of the Company. Subject to the foregoing, UBS will maintain information barriers and other procedures in accordance with firm policies and practices to avoid unauthorized disclosure of confidential information relating to the status of the sale process, to any member of the Stapled Financing Team. UBS will have no obligation to the Company or its security holders to use or disclose to the Company any information obtained from any prospective Acquiror in connection with UBS' activities on behalf of such Acquiror.

2. For UBS' services hereunder, the Special Committee and the Company agree that the Company shall pay to UBS in cash a transaction fee, payable promptly at the closing of a Sale Transaction, equal to (i) $ 8,000,000 plus (ii) 1.75% of Transaction Value for amounts in excess of $4,500,000,000 (the "Transaction Fee"). UBS shall be entitled to receive a monthly fee of $200,000, payable on the first day of each month during the Term commencing on August 1, 2014; provided that (a) in no event shall the aggregate of all monthly fees exceed $1,400,000, and (b) all monthly fees paid to UBS hereunder shall be credited against any Transaction Fee payable hereunder.

If, at any time prior to the expiration of the later of (i) twelve months following the Term and (ii) eighteen months following the Effective Date, the Company enters into an agreement that subsequently results in a Sale Transaction, or a Sale Transaction is consummated, then the Special Committee and the Company agree that the Company will pay UBS the Transaction Fee specified above in cash promptly upon the closing of such Sale Transaction.

Whether or not any Sale Transaction is consummated, and in addition to any fees payable to UBS, the Special Committee and the Company agree that the Company will reimburse UBS, upon its request from time to time, for the reasonable out-of-pocket

expenses incurred by it in entering into and performing services pursuant to this Agreement, including the fees, disbursements and other charges of its legal counsel; provided, that (i) UBS shall not engage additional advisors or consultants without the express approval of the Special Committee and (ii) the fees and expenses of UBS's legal counsel subject to reimbursement hereunder shall be capped at $75,000, unless otherwise expressly approved by the Special Committee, provided, however, that this limitation shall not apply to fees payable pursuant to the Indemnification Agreement.

3. Except to the extent legally required, including in connection with any filings in connection with a bankruptcy case involving the Company, none of (i) the name of UBS, (ii) any advice or opinion rendered by UBS to the Special Committee, or (iii) the terms of this Agreement or any communication from UBS in connection with the services performed by UBS pursuant to this Agreement will be quoted or referred to orally or in writing, or in the case of (ii) and (iii), reproduced or disseminated, by the Special Committee or any representative of the Company to whom the Special Committee has opted to provide such information, or any of their agents, without UBS' prior written consent.

4. The Special Committee will furnish UBS (and, if negotiations proceed with a potential Acquiror, will request that such Acquiror furnish UBS) with such information as UBS believes appropriate to its assignment (all such information so furnished being the "Information"). The Special Committee recognizes and confirms that UBS (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed responsibility for independently verifying the same, (b) does not assume responsibility for the accuracy, completeness or reasonableness of the Information and such other information and (c) will not make an appraisal of any assets or liabilities (contingent or otherwise) of a potential Acquiror or the Company. The Company represents and warrants that, to the best of its knowledge, the Information to be furnished to UBS by or on behalf of the Company and the Special Committee, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify UBS if it learns of any material inaccuracy or misstatement in, or material omission from, any Information previously delivered to UBS.

5. UBS' services hereunder may be terminated (i) by the Special Committee or UBS upon 10 days prior written notice without liability or continuing obligation of the Special Committee or UBS, except that (A) UBS shall be entitled to the fees payable pursuant to Section 2 hereof in accordance with the terms thereof and (B) expenses incurred by UBS as a result of services rendered prior to the date of the termination shall become immediately payable in full, or (ii) by the Special Committee immediately for Cause. For purposes of this Agreement, "Cause" shall mean bad faith, gross negligence, willful misconduct, fraud or other similar actions by UBS or its Representatives in connection with its engagement hereunder. UBS shall be entitled to any fees payable pursuant to Section 2 hereof in accordance with the terms thereof and expenses incurred by UBS as a result of services rendered prior to the date of the termination shall become immediately payable in full; provided that (i) no Transaction Fee shall be due or payable to UBS in the event of any termination of this Agreement (x) by the Company for Cause or (y) by UBS before a Sale Transaction has closed, and (ii) Sections 3, 5 (other than the first sentence thereof), 6, and 10 through 16 hereof shall

-4-

remain operative and in full force and effect regardless of any termination. Any claim by the Company against UBS for damages arising from any breach of this Agreement, or any agreement entered into in connection with UBS's engagement hereunder, including any confidentiality or similar agreement, by UBS or its Representatives, which breach is not cured in all material respects within 10 days of notice of such breach by the Special Committee, may be setoff against the Company's obligation to pay any fees due hereunder. For purposes of this Agreement, "Representatives" shall mean, with respect to any person, such person, any affiliates of such person, each other person, if any, controlling such person or any of its affiliates, and the respective officers, current and former directors, employees and agents, and the successors and assigns of all of the foregoing persons.

6.  The obligations of the Company hereunder shall be the joint and several obligations of Statewide Mobility Partners LLC, ITR Concession Company Holdings LLC, and ITR Concession Company LLC. UBS' obligations to provide the services described herein are contingent upon, and expressly subject to, the execution of a consent, in form and substance reasonably satisfactory to UBS, pursuant to which the secured lenders consent to the performance of the Company's obligations under this agreement, including without limitation the Company's payment of UBS' fees and expenses described herein (other than any contingent claims for indemnification), free and clear of such lenders' security interests in the Company's assets.

7. UBS may, at its own expense, place customary tombstone announcements or advertisements in financial newspapers and journals describing its services hereunder.

8. The Company and the Special Committee acknowledge and agree that UBS has been retained to act solely as an advisor to the Special Committee, and not as an advisor to the Company or any other person, and the Special Committee's engagement of UBS is not intended to confer rights upon any person (including shareholders, employees or creditors of the Company) not a party hereto as against UBS or its affiliates, or their respective directors, officers, employees or agents, successors, or assigns. UBS shall act as an independent contractor under this Agreement, and not in any other capacity including as a fiduciary, and any duties arising out of its engagement shall be owed solely to the Special Committee.

9. UBS AG (the parent of UBS) and its subsidiaries, branches and affiliates (the "UBS Group") are involved in a wide range of commercial banking, investment banking and other activities (including wealth and investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. Information which is held elsewhere within UBS or within the UBS Group but of which none of the individuals in the Investment Banking Department of UBS involved in providing the services contemplated by this engagement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining UBS' responsibilities to the Special Committee under this engagement. Neither UBS nor any other part of the UBS Group will have any duty to disclose to the Special Committee or utilize for the Special Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, UBS, its affiliates and its and their respective employees may trade the securities of the Company and a potential Acquiror for its own account and for the accounts of customers, and may

at any time hold a long or short position in such securities. UBS agrees that, without the express prior approval of the Special Committee, UBS Group shall not act for or advise any Acquiror in connection with a potential Sale Transaction, including providing or offering to provide financing for any such Sale Transaction (other than in accordance with the terms of the arrangements for the Stapled Financing).

10. The Special Committee acknowledges that the Company is providing the indemnification and other agreements set forth in the Indemnification Agreement attached hereto, the provisions of which are incorporated herein by reference and shall survive the termination, expiration or supersession of this Agreement.

11. In the event that the Company is or becomes a debtor under chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of UBS pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek UBS' retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that UBS' general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Sale Transaction, that the value to the Company of UBS' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by UBS' professionals in the performance of the services to be provided hereunder. The Company shall submit UBS' employment application as soon as practicable following the Company's filing of a voluntary chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered as soon as practicable. The employment application and the proposed order authorizing employment of UBS shall be provided to UBS promptly, and must be acceptable to UBS in its sole discretion. Following entry of the order authorizing the employment of UBS, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with UBS to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. UBS shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless UBS' retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to UBS in all respects. If the order authorizing the employment of UBS is not obtained, or is later reversed or set aside for any reason, UBS may terminate this Agreement, and the Company shall reimburse UBS for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders, provided that following such termination the Company shall have no obligation or liability to pay any fees to UBS pursuant to Section 2 hereof, other than a Transaction Fee for a Sale Transaction arranged by UBS prior to that termination. Prior to commencing a chapter 11 case, the

Company shall pay all amounts due and payable to UBS in cash. The terms of this Section are solely for the benefit of UBS, and may be waived, in whole or in part, only by UBS.

12. To the extent UBS is requested by the Special Committee to perform any financial advisory or investment banking services which are not within the scope of this engagement (such as rendering a fairness opinion), the Company shall pay UBS such fees as shall be mutually agreed upon by UBS and the Special Committee in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

13. If UBS is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise (other than providing any testimony necessary to obtain bankruptcy court approval of any Sale Transaction), the Company shall pay UBS additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of UBS' counsel in connection therewith.

14. THIS AGREEMENT AND ANY CLAIM, COUNTERCLAIM OR DISPUTE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT ("CLAIM"), DIRECTLY OR INDIRECTLY, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EXCEPT AS SET FORTH BELOW, NO CLAIM MAY BE COMMENCED, PROSECUTED OR CONTINUED IN ANY COURT OTHER THAN THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND THE SPECIAL COMMITTEE, THE COMPANY AND UBS CONSENT TO THE JURISDICTION OF SUCH COURTS AND PERSONAL SERVICE WITH RESPECT THERETO; PROVIDED THAT IN THE EVENT THAT ANY BANKRUPTCY CASE INVOLVING THE COMPANY IS COMMENCED, THE BANKRUPTCY COURT IN WHICH SUCH CASE IS PENDING SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS. THE COMPANY HEREBY CONSENTS TO PERSONAL JURISDICTION, SERVICE AND VENUE IN ANY COURT IN WHICH ANY CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT IS BROUGHT BY ANY THIRD PARTY AGAINST UBS OR ANY INDEMNIFIED PARTY WITH RESPECT TO ANY CLAIMS BY UBS OR ANY INDEMNIFIED PARTY HEREUNDER AGAINST THE COMPANY WHICH RELATE DIRECTLY OR INDIRECTLY TO OR ARISE FROM THE CLAIMS ASSERTED AGAINST UBS OR ANY INDEMNIFIED PARTY BY THE THIRD PARTY IN SUCH JURISDICTION. EACH OF UBS, THE SPECIAL COMMITTEE AND THE COMPANY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING OR CLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT. THE SPECIAL COMMITTEE AND THE COMPANY AGREE THAT A FINAL JUDGMENT IN ANY PROCEEDING OR CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THEM AND MAY BE ENFORCED IN

ANY OTHER COURTS TO THE JURISDICTION OF WHICH THEY ARE OR MAY BE SUBJECT, BY SUIT UPON SUCH JUDGMENT.

15. This Agreement (including the attached Indemnification Agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect or any other provision of this Agreement, which will remain in full force and effect. This Agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by both UBS and the Special Committee. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

16. This Agreement (including the attached Indemnification Agreement) shall be binding upon the Special Committee, the Company (with respect to its commitments under this Agreement and the Indemnification Agreement), and UBS and their respective successors and assigns and any successor or assign of any substantial portion of the Company's or UBS' respective businesses and/or assets.

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS SECURITIES LLC

By:_____          By:_____
Charles Otton                                   Alexander Greenbaum
Managing Director                            Director

Accepted and agreed to
with effect from the Effective Date:

**SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
STATEWIDE MOBILITY PARTNERS LLC,
a Delaware limited liability company**

By:_____          Committee's Signature Date: _____
    [Name]
    [Title]

**STATEWIDE MOBILITY PARTNERS, LLC,
a Delaware limited liability company**

By:_____          Company Signature Date: _____
    [Name]
    [Title]

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS SECURITIES LLC

By:_____          By:_____

Accepted and agreed to
with effect from the Effective Date:

**SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
STATEWIDE MOBILITY PARTNERS LLC,
a Delaware limited liability company**

By:_____          Committee's Signature Date: _____

**STATEWIDE MOBILITY PARTNERS, LLC,
a Delaware limited liability company**

By:_____          Company Signature Date: _____
  Fernando Redondo
  Authorized Signatory

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

Very truly yours,

UBS SECURITIES LLC

By:_____          By:_____

Accepted and agreed to
with effect from the Effective Date:

**SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
STATEWIDE MOBILITY PARTNERS LLC,
a Delaware limited liability company**

By:_____     Committee's Signature Date: _____

**STATEWIDE MOBILITY PARTNERS, LLC,
a Delaware limited liability company**

By:_____     Company Signature Date: _____
   Fernando Redondo
   Authorized Signatory

ANNEX A

1.  For the purposes hereof, "Transaction Value" shall equal the sum of (A) "Equity
    Value," which shall mean (i) in the case of the sale or exchange of equity securities,
    the total consideration received or to be received for such securities (including, for
    purposes of this clause (A)(i), amounts  in escrow), plus payments made in
    installments, plus amounts payable in connection with the Sale Transaction under
    agreements not to compete or similar arrangements, plus contingent payments
    (whether or not related to future earnings or operations); and (ii) in the case of a sale
    or disposition of assets, the total consideration paid or received or to be paid or
    received for such assets (including amounts in escrow and installment payments),
    plus contingent payments (whether or not related to future earnings or operations)
    and (B) the principal amount of all indebtedness for borrowed money assumed by an
    Acquiror as part of the Sale Transaction or owed by the Company immediately after
    the closing of a Sale Transaction effected through a transfer of equity securities of the
    Company.  In the case of a Sale Transaction involving the sale, exchange or other
    disposition of more than 50% of the equity securities of the acquired company,
    Transaction Value will be calculated as if all equity securities retained by security
    holders of the acquired company upon consummation of such Sale Transaction had
    been acquired in such Sale Transaction.

2.  Notwithstanding any provision in this Agreement to the contrary, if all or a portion of
    Transaction Value consists of contingent future payments, then the Transaction Fee
    attributable thereto shall be payable upon consummation of the Sale Transaction,
    calculated as agreed by the Special Committee and UBS, in good faith.  To the extent
    that the Special Committee and UBS are unable to agree on the Transaction Fee
    attributable to such future payments, then such portion of the Transaction Fee shall
    be determined by a third-party valuation consultant acceptable to both the Special
    Committee and UBS.

3.  For purposes of calculating the Transaction Fee, equity securities constituting a part
    of the consideration payable in the Sale Transaction that are traded on a national
    securities exchange or quoted on The NASDAQ Stock Market shall be valued at the
    closing price on the trading day immediately prior to closing of the Sale Transaction
    (the "Last Trading Day").  Such equity securities which are traded in an over-the-
    counter market shall be valued at the mean between the latest bid and asked prices
    on the Last Trading Day.  Any debt or other securities or other property shall be
    valued as the Special Committee and UBS may mutually agree.

## UBS Securities LLC Indemnification Agreement

September 4, 2014

UBS Securities LLC
299 Park Avenue
New York, New York 10171

Ladies and Gentlemen:

In connection with the engagement of UBS Securities LLC ("UBS") to advise and assist the undersigned (together with its affiliates and subsidiaries, referred to as the "Company") with the matters set forth in the Agreement, dated the date hereof, between the Company, the Special Committee of the Company and UBS (the "Agreement"), in the event that UBS becomes involved in any capacity in any claim, suit, action, proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or arbitration proceeding) (collectively, a "Proceeding") in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, including, without limitation, related services and activities provided prior to the date hereof, the Special Committee and the Company agree that the Company shall indemnify, defend and hold UBS harmless to the fullest extent permitted by law, from and against any losses, claims, damages, liabilities and expenses in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, including, without limitation, related services and activities provided prior to the date hereof, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such losses, claims, damages, liabilities and expenses resulted primarily from the bad faith, gross negligence or willful misconduct of UBS. In addition, in the event that UBS becomes involved in any capacity in any Proceeding in connection with any matter in any way relating to or referred to in the Agreement or arising out of the matters contemplated by the Agreement, the Special Committee and the Company agree that the Company will reimburse UBS for its reasonable legal and other out-of-pocket expenses (including the cost of any investigation and preparation) as such expenses are incurred by UBS in connection therewith.

If such indemnification is applicable in accordance with its terms hereunder but is legally unavailable, the Company agrees to contribute to the losses, claims, damages, liabilities and expenses involved (i) in the proportion appropriate to reflect the relative benefits received or sought to be received by the Company and its stockholders and affiliates and other constituencies, on the one hand, and UBS, on the other hand, in connection with the matters contemplated by the Agreement or (ii) if (but only if and to the extent) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, as well as any other relevant equitable considerations; provided that, in no event shall the Company contribute less than the amount necessary to assure that UBS is not liable for losses, claims, damages, liabilities and expenses in excess of the

-i-

amount of fees actually received by UBS pursuant to the Agreement. The Special Committee and the Company agree that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company and its stockholders and affiliates and other constituencies, on the one hand, and the party entitled to contribution, on the other hand, in connection with the matters contemplated by the Agreement shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Company or its stockholders or affiliates and other constituencies, as the case may be, as a result of or in connection with the matters (whether or not consummated) for which UBS has been retained to perform financial services bears to the fees paid to UBS under the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Special Committee or the Company or other conduct by the Special Committee or the Company (or its employees or other agents), on the one hand, or by UBS, on the other hand. The Special Committee and the Company will not settle any Proceeding in respect of which indemnity may be sought hereunder, whether or not UBS is an actual or potential party to such Proceeding, without UBS' prior written consent, and UBS will not settle any Proceeding in respect of which indemnity may be sought hereunder, whether or not the Special Committee or the Company is an actual or potential party to such Proceeding, without the Special Committee's or the Company's respective prior written consent (such consent not to be unreasonable withheld or conditioned). For purposes of this Indemnification Agreement, UBS shall include UBS Securities LLC, any of its affiliates, each other person, if any, controlling UBS or any of its affiliates, their respective officers, current and former directors, employees and agents, and the successors and assigns of all of the foregoing persons. The foregoing indemnity and contribution agreement shall be in addition to any rights that any indemnified party may have at common law or otherwise.

The Special Committee and the Company agree that neither UBS nor any of its affiliates, directors, agents, employees or controlling persons shall have any liability to the Special Committee or the Company or any person asserting claims on behalf of or in right of the Special Committee or the Company in connection with or as a result of either UBS' engagement under the Agreement or any matter referred to in the Agreement, including, without limitation, related services and activities provided prior to the date hereof, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that any losses, claims, damages, liabilities or expenses were incurred by the Company solely as the direct and proximate result of the bad faith, gross negligence or willful misconduct of UBS in performing the services that are the subject of the Agreement.

THIS INDEMNIFICATION AGREEMENT AND ANY CLAIM, COUNTERCLAIM OR DISPUTE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT ("CLAIM"), DIRECTLY OR INDIRECTLY, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. EXCEPT AS SET FORTH BELOW, NO CLAIM MAY BE COMMENCED, PROSECUTED OR CONTINUED IN ANY COURT OTHER THAN THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE

JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND THE
SPECIAL COMMITTEE, THE COMPANY AND UBS CONSENT TO THE
JURISDICTION OF SUCH COURTS AND PERSONAL SERVICE WITH RESPECT
THERETO; PROVIDED, THAT IN THE EVENT THAT ANY BANKRUPTCY CASE
INVOLVING THE COMPANY IS COMMENCED, THE BANKRUPTCY COURT IN
WHICH SUCH CASE IS PENDING SHALL HAVE EXCLUSIVE JURISDICTION OVER
THE ADJUDICATION OF SUCH MATTERS. THE COMPANY HEREBY CONSENTS
TO PERSONAL JURISDICTION, SERVICE AND VENUE IN ANY COURT IN WHICH
ANY CLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT IS
BROUGHT BY ANY THIRD PARTY AGAINST UBS OR ANY INDEMNIFIED PARTY
WITH RESPECT TO ANY CLAIMS BY UBS OR ANY INDEMNIFIED PARTY
HEREUNDER AGAINST THE COMPANY WHICH RELATE DIRECTLY OR
INDIRECTLY TO OR ARISE FROM THE CLAIMS ASSERTED AGAINST UBS OR ANY
INDEMNIFIED PARTY BY THE THIRD PARTY IN SUCH JURISDICTION.  EACH OF
UBS, THE SPECIAL COMMITTEE AND THE COMPANY WAIVES ALL RIGHT TO
TRIAL BY JURY IN ANY PROCEEDING OR CLAIM (WHETHER BASED UPON
CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR IN ANY WAY RELATING
TO THIS AGREEMENT.  THE SPECIAL COMMITTEE AND THE COMPANY EACH
AGREES THAT A FINAL JUDGMENT IN ANY PROCEEDING OR CLAIM ARISING
OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT BROUGHT IN ANY
SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON THEM AND MAY BE
ENFORCED IN ANY OTHER COURTS TO THE JURISDICTION OF WHICH THEY
ARE OR MAY BE SUBJECT, BY SUIT UPON SUCH JUDGMENT.

The foregoing Indemnification Agreement shall remain in full force and effect
notwithstanding any termination of UBS' engagement.  This Indemnification Agreement
may be executed in two or more counterparts, each of which shall be deemed an
original, but all of which shall constitute one and the same agreement.

Very truly yours,

**SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
STATEWIDE MOBILITY PARTNERS LLC,
a Delaware limited liability company**

By:_____          Committee's Signature Date: _____

STATEWIDE MOBILITY PARTNERS LLC,
a Delaware limited liability company

By:_____     Company Signature Date: _Oct. 8, 2014_____
   Fernando Redondo
   Authorized Signatory




Accepted and agreed to as of
the date first above written:

UBS SECURITIES LLC


By:_____



By:_____



-4-

By:_____    Company Signature Date: _____
   [Name]
   [Title]

                 By:_____
                   [Name]
                   [Title]

Accepted and agreed to as of
the date first above written:

UBS SECURITIES LLC

By:_____
   Charles Otton
   Managing Director

By:_____
   Alexander Greenbaum
   Director